**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×

DANA A. LILIENTHAL *and* RUTH TOMSKY,

                    *Plaintiffs,*                       **17 CV 06426**

       *v.*

OPTION CARE ENTERPRISES, INC., and JIM BITONTI,   **COMPLAINT**
individually,

                    *Defendants.*

------------------------------------------------------------------------×

      Plaintiffs Dana A. Lilienthal and Ruth Tomsky, by their counsel, Young & Ma LLP and The Harman Firm, LLP, allege for their Complaint against Defendants Option Care Enterprises Inc. and Jim Bitonte as follows:

### PRELIMINARY STATEMENT

      1.     Plaintiff Dana A. Lilienthal and Plaintiff Ruth Tomsky (collectively, "Plaintiffs") seek damages and costs against Defendants Option Care Enterprises, Inc. ("Option Care") and Jim Bitonte, for discriminating against them on the basis of their religion, sex, and pregnancy, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000k, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*.

      2.     Plaintiffs also seek damages and costs against Defendants for discriminating against them on the basis of perceived disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the NYCHRL.

      3.     Plaintiff Lilienthal, individually, also seeks damages and costs against Defendants for discriminating against her based on her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the NYCHRL.

4.      Plaintiff Tomsky further alleges that Defendant Option Care retaliated against her, in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, by terminating her for using FMLA leave.

### JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

5.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiffs' Title VII, ADA, and ADEA claims.

6.      Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiffs' NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

7.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

8.      All conditions precedent to maintaining this action have been fulfilled.  A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right-to-Sue letter relating to the discriminatory acts described in this Complaint.  This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

### PARTIES

9.      Plaintiff Lilienthal, at all times relevant hereto, was and is a resident of Nassau County in the State of New York.

10.      Plaintiff Tomsky, at all times relevant hereto, was and is a resident of Nassau County in the State of New York.

11.     Upon information and belief, at all times relevant hereto, Option Care was and is a corporation providing home infusion services, organized under the laws of the State of Delaware with headquarters located at 485 Half Day Road, Suite 300, Buffalo Grove, Illinois 60089 in Lake County.  Option Care has a principle place of business in New York at 11402 15th Avenue, College Point, NY 11356.

12.     Upon information and belief, Jim Bitonti resides in the State of New York.

13.     At all relevant times, both Plaintiffs worked for Defendants exclusively and physically in New York City.

## STATEMENT OF FACTS

**Plaintiff Lilienthal**

14.     Ms. Lilienthal is a Jewish woman over the age of 40.

15.     Ms. Lilienthal is an experienced dietitian with over 16 years of industry experience at organizations such as Columbia University, Pentec Health, and Condé Nast.  Ms. Lilienthal holds a bachelor's degree from the University of Rhode Island and a master's degree from Hofstra University and is a registered dietitian certified with the State of New York and the Academy of Nutrition and Dietetics.

16.     On or about September 2015, Ms. Lilienthal began working at Option Care as a Nutrition Support Dietitian.

17.     Before Ms. Lilienthal's hire, Option Care told her that the New York office would be well-staffed.

18.     However, upon arriving at Option Care, Ms. Lilienthal found that she was the only dietitian in her office and had a tremendous workload.

19.     Shortly after Ms.  Lilienthal started at Option Care, Jim Bitonti was hired as Option Care's General Manager; Ms. Lilienthal reported directly to Mr. Bitonte.

20.     Mr. Bitonti was openly displeased when Ms. Lilienthal needed to take days off work to observe Jewish religious holidays, such as Rosh Hashanah and Yom Kippur.

21.     Mr. Bitonte interrogated Ms. Lilienthal about days that she took off work, reluctantly telling her that he "was doing this only because it is a religious holiday," yet never asked non-Jewish employees about their use of days off or made negative comments about non-Jewish employees' observance of religious holidays.

22.     Even when Mr. Bitonte grudgingly allowed Ms. Lilienthal to take days off work for her religious obligations, he required her to work on Sundays to "make up the time."

23.     Non-Jewish employees were never required to "make up time" that they took off work for religious holidays.

24.     Mr. Bitonte treated Ms. Lilienthal less well than non-Jewish employees.

25.     Mr. Bitonte chastised Ms. Lilienthal for minor or fabricated "infractions" for which younger, non-Jewish employees were never disciplined.

26.     Mr. Bitonti tended to favor the younger employees in the office, allowing younger employees to break rules, arrive late, use personal cell phones and have packages delivered to the office, but would not allow Ms. Lilienthal to do the same.

27.     This behavior by Mr. Bitonti was so prevalent that it became a joke among the other workers in the office as to how badly he treated her.

28.     When Ms. Lilienthal first began work at Option Care, Option Care assigned her to the office that had belonged to Option Care's previous dietitian.

29.     Yet Mr. Bitonte removed Ms. Lilienthal from this office without explanation.

30.     In fact, Mr. Bitonte refused to give Ms. Lilienthal an office at all, even though there were five empty offices in the Option Care workplace.

31.     Mr. Bitonte would not allow Ms. Lilienthal to perform the job duties or exercise the authority commensurate with her experience and title.

32.     Indeed, Mr. Bitonte went out of his way to prevent Ms. Lilienthal from advancing in her career by assigning her time-consuming administrative duties that were outside of her job description and refusing to allow her to take on new opportunities and projects.

33.     For example, Ms. Lilienthal sent Mr. Bitonte an email, proposing a plan for transferring the administrative duties that she should not be handling to other employees.

34.     In response, Mr. Bitonte asked Ms. Lilienthal what her job duties would be if those administrative tasks were transitioned to other individuals.

35.     Ms. Lilienthal responded that she would perform the job that she had been hired to do.

36.     Mr. Bitonte replied derisively, "And what is your job?"

37.     This comment made Ms. Lilienthal feel humiliated and targeted and demonstrated that, after more than a year of working together, Mr. Bitonte had utterly refused to engage with Ms. Lilienthal at all and had no idea what her role or job responsibilities were.

38.     On or about July 12, 2016, Ms. Lilienthal requested to go to a doctor's appointment.

39.     In response, Mr. Bitonte asked whether Ms. Lilienthal whether she was "trying to start a family."

40.     Ms. Lilienthal, surprised by the question, responded that she was.

41.     After Ms. Lilienthal disclosed this to Mr. Bitonte, he began attempting to restrict her from using paid time off for her pregnancy-related doctors' appointments, commenting that she "did not have enough PTO days."

42.     Mr. Bitonte harassed Ms. Lilienthal concerning medical appointments she had scheduled for August 1, August 16, and September 13, 2016.

43.     For example, Mr. Bitonti would constantly focus on the amount of PTO Ms. Lilienthal had, even though Ms. Lilienthal always readily made up any time she needed to miss due to her pregnancy-related medical appointments.

44.     Mr. Bitonte also made disparaging comments about Ms. Tomsky, another Jewish female pregnant clinician, to Ms. Lilienthal, such as, "[Ms. Tomsky] is going to take all 12 weeks of maternity [FMLA]," in a malicious tone that implied that he was displeased by Ms. Tomsky's use of maternity leave.

45.     Mr. Bitonti also suggested that Ms. Tomsky's return from maternity leave was uncertain, commenting that he was not clear "if she was coming back."

46.     Ms. Lilienthal, afraid of Mr. Bitonte's clear bias against pregnant employees, avoided disclosing her pregnancy for as long as possible, but ultimately had to tell Mr. Bitonte that she was pregnant and did so on or about October 28, 2016.

47.     Less than a week later, Option Care abruptly terminated Ms. Lilienthal's employment.

48.     On that day, Mr. Bitonti summoned Ms. Lilienthal to his office under the pretenses of giving her a one year review.

49.     However, when Ms. Lilienthal arrived, Vanessa, an Option Care HR representative was on the phone, and Vanessa informed Ms. Lilienthal that she was being terminated.

50.     Ms. Lilienthal began hyperventilated and needed to leave the office; when she returned, Vanessa laid out the terms of her termination.

51.     Ms. Lilienthal was shocked – Option Care had made clear that the New York office was to be the "flagship" office, and, as such, would require a dietitian.

52.     Several of Option Care's smaller offices employ a dietitian, and account managers are instructed to use Option Care's dietitian services as a selling point.

53.     No one at Option Care could explain why Option Care would not staff the New York office with a dietitian.

**Plaintiff Tomsky's Claims**

54.     Ms. Tomsky is an experienced nurse and clinician who has over 12 years of experience at well-reputed healthcare facilities, including Johns Hopkins Hospital.  Ms. Tomsky holds a bachelor's degree in nursing from the University of Maryland School of Nursing and is a registered nurse in New York State.

55.     On December 16, 2013, Ms. Tomsky began working at Option Care as a Clinical Liaison.

56.     As a Clinical Liaison, Ms. Tomsky was Option Care's on-site point of contact for discharge planners at the hospitals with which Option Care was affiliated.  Her job responsibilities involved coordinating patient discharge between hospitals and the Option Care office; reporting patient insurance coverage; gathering relevant paperwork for new patients; and directing patients to appropriate therapies, administrative offices, and healthcare facilities.

57.     When Ms. Tomsky took the Option Care position, Option Care represented that she would be able to take religious holidays, and leave work on Fridays on time for the Jewish Sabbath.

58.     However, when Ms. Tomsky started, she immediately faced pressure to work past sundown on the Sabbath.

59.     Ms. Tomsky's job performance at Option Care was excellent, and she was assigned high-responsibility job duties, including serving one of Option Care's largest territories and working extensively with Memorial Sloan Kettering Cancer Center, one of Option Care's most important clients.

60.     Like Ms. Lilienthal, Ms. Tomsky reported directly to Mr. Bitonte upon his hire in 2015.

61.     Upon Mr. Bitonte's hire, Ms. Tomsky began facing increased pressure to work on the Sabbath.

62.     For example, Mr. Bitonti regularly required Ms. Tomsky to participate in Friday afternoon phone meetings that made it nearly impossible for her to observe the Sabbath.

63.     Option Care did not take any steps to ensure that Ms. Tomsky would be able to take the necessary religious leave without pressure, instead allowing Mr. Bitonti to harass Jewish employees, including Ms. Tomsky, to work on the Sabbath.

64.     Ms. Tomsky became pregnant in and around December 2015.

65.     In and around March 2016, Ms. Tomsky informed Mr. Bitonte that she was pregnant.

66.     Ms. Tomsky also told Mr. Bitonte that she was pregnant with twins and that her pregnancy had been deemed high-risk, meaning that she would likely have to take time off work due to pregnancy-related health concerns and complications.

67.     Prior to disclosing her pregnancy to Mr. Bitonte, Ms. Tomsky had never received any negative feedback from Option Care regarding her job performance.

68.     As soon as Mr. Bitonte found out that Ms. Tomsky was pregnant, however, he began to subject her to discriminatory treatment.

69.     For example, though Mr. Bitonti agreed to "accommodate" Ms. Tomsky during her pregnancy by shifting some of her responsibilities in Manhattan to other Option Care employees.

70.     However, as time progressed, Mr. Bitonti repeatedly threatened to revoke Ms. Tomsky's accommodation, stating that "he didn't know how long he could keep doing it," and that Ms. Tomsky would need to use her sick time and go out on leave early.

71.     As Ms. Tomsky's maternity leave approached, Ms. Tomsky attempted to work with Mr. Bitonti to cover her territory while she was out on leave.

72.     A week before Ms. Tomsky was scheduled to take maternity leave, in and around August 2016, Mr. Bitonte told her that he was "getting a lot of pressure," implying that Ms. Tomsky's need to take maternity leave was merely an inconvenience for Option Care.

73.     On August 29, 2016, Ms. Tomsky was admitted to the hospital for delivery.

74.     Ms. Tomsky took disability leave beginning on August 30, 2016.

75.     On October 10, 2016, Mr. Bitonte asked Ms. Tomsky whether she intended to go on FMLA leave after the end of her disability leave.

76.     Ms. Tomsky confirmed that she did intend to go on FMLA leave, and she did so through November 18, 2016.

77.     Ms. Tomsky was scheduled to return to work within less than three months of going on leave and did not exhaust her FMLA leave.

78.     Ms. Tomsky repeatedly reached out to Option Care to coordinate her return to work, speaking with representatives from Human Resources.

79.     On the day before Ms. Tomsky returned to work, she received a call from HR. Mr. Bitonti and on that call, Option Care abruptly terminated her employment.

80.     Option Care stated that it was eliminating Ms. Tomsky's position.

81.     Ms. Tomsky inquired as to whether Option Care was going to stop servicing her accounts and facilities; Option Care responded that it would not, but that it would just assign those accounts to less busy representatives.

82.     Vanessa Fitzpatrick, Option Care's Vice President of Operations, explicitly told Ms. Tomsky, "We couldn't fire you [while you were] on leave, so we waited for when it was time for you to come back," and that the company wanted to do her the "courtesy" of not making her come in to the office on the following business day to be terminated.

83.     Ms. Tomsky asked Mr. Bitonti why Option Care would terminate her, given her very strong performance in the New York region.

84.     Mr. Bitonti responded by saying that people "stuck up" for Ms. Tomsky, but that the decision was final.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Hostile Work Environment in Violation of Title VII**
**(All Plaintiffs Against Defendant Option Care)**

85.     Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 84 with the same force as though separately alleged herein.

86.     Title VII prohibits an employer from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of religion, sex, and/or pregnancy.

87.     Defendant violated Title VII by subjecting Plaintiffs to a hostile work environment based on religion, sex, and pregnancy, including making discriminatory comments

10

to Plaintiffs about their protected characteristics and treating Plaintiffs less well than other employees.

88.     As a direct and proximate consequence of Defendant's religion, sex, and pregnancy discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

89.     Defendant's discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights.  Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
### Hostile Work Environment in Violation of the ADEA
### (Plaintiff Lilienthal Against Defendant Option Care)

90.     Plaintiffs hereby reallege and incorporates each and every allegation contained in paragraphs 1 through 89 with the same force as though separately alleged herein.

91.     The ADEA prohibits an employer from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of age.

92.     Defendant violated the ADEA by subjecting Plaintiff Lilienthal to a hostile work environment based on her age, including making discriminatory comments to her and treating her less well than other employees.

93.     As a direct and proximate consequence of Defendant's age discrimination, Plaintiff Lilienthal has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

94.     Defendant's discriminatory treatment of Plaintiff Lilienthal was willful and in reckless disregard of Plaintiff Lilienthal's protected rights.  Accordingly, Plaintiff Lilienthal is entitled to an award of punitive damages against Defendant.

### THIRD CAUSE OF ACTION
**Hostile Work Environment Based on Religion, Sex, Pregnancy, and Perceived Disability in Violation of the NYCHRL**
**(All Plaintiffs Against All Defendants)**

95.     Plaintiffs hereby reallege and incorporates each and every allegation contained in paragraphs 1 through 94 with the same force as though separately alleged herein.

96.     The NYCHRL prohibits an employer from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of religion, sex, pregnancy, or actual or perceived disability.

97.     Defendants violated the NYCHRL by subjecting Plaintiffs to a hostile work environment based on religion, sex, pregnancy, and perceived disability, including making discriminatory comments to Plaintiffs about their protected characteristics and treating Plaintiffs less well than other employees.

98.     As a direct and proximate consequence of Defendants' religion, sex, pregnancy, and perceived disability discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

99.     Defendants' discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights.  Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendant.

**FOURTH CAUSE OF ACTION**
**Hostile Work Environment Based on Age in Violation of the NYCHRL**
**(Plaintiff Lilienthal Against All Defendants)**

100.　Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 99 with the same force as though separately alleged herein.

101.　The NYCHRL prohibits an employer from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of age.

102.　Defendants violated the NYCHRL by subjecting Plaintiff Lilienthal to a hostile work environment based on age, including making discriminatory comments to her and treating her less well than other employees.

103.　As a direct and proximate consequence of Defendants' age discrimination, Plaintiff Lilienthal has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

104.　Defendants' discriminatory treatment of Plaintiff Lilienthal was willful and in reckless disregard of Plaintiff Lilienthal's protected rights.  Accordingly, Plaintiff Lilienthal is entitled to an award of punitive damages against Defendant.

**FIFTH CAUSE OF ACTION**
**Failure to Provide a Reasonable Accommodation in Violation of Title VII**
**(All Plaintiffs Against Defendant Option Care)**

105.　Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 104 with the same force as though separately alleged herein.

106.　Title VII requires an employer to engage in an interactive process to identify a reasonable accommodation for an employee's pregnancy and for an employee's religious obligations.

107.    Defendant violated Title VII when it refused to grant Plaintiffs' requests for reasonable accommodations for their pregnancies and religious obligations, failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiffs' pregnancies and religious obligations, and failed to demonstrate that providing a reasonable accommodation for Plaintiffs' pregnancies and religious obligations would impose an undue hardship on Defendant's business operations.

108.    As a direct and proximate consequence of Defendant's failure to provide a reasonable accommodation, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

109.    Defendant's discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights.  Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendant.

**SIXTH CAUSE OF ACTION**
**Failure to Provide a Reasonable Accommodation in Violation of the NYCHRL**
**(All Plaintiffs Against All Defendants)**

110.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 109 with the same force as though separately alleged herein.

111.    The NYCHRL requires an employer to engage in an interactive process to identify a reasonable accommodation for an employee's pregnancy and for an employee's religious obligations.

112.    Defendants violated the NYCHRL when it refused to grant Plaintiffs' requests for reasonable accommodations for their pregnancies and religious obligations, failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiffs'

pregnancies and religious obligations, and failed to demonstrate that providing a reasonable

accommodation for Plaintiffs' pregnancies and religious obligations would impose an undue

hardship on Defendants' business operations.

113.    As a direct and proximate consequence of Defendants' failure to provide a

reasonable accommodation, Plaintiffs have suffered, and continue to suffer, substantial damages,

including, but not limited to, emotional distress and suffering, all in amounts to be determined at

trial.

114.    Defendants' discriminatory treatment of Plaintiffs was willful and in reckless

disregard of Plaintiffs' protected rights.  Accordingly, Plaintiffs are entitled to an award of

punitive damages against Defendants.

## SEVENTH CAUSE OF ACTION
### Wrongful Termination in Violation of Title VII
### (All Plaintiffs Against Defendant Option Care)

115.    Plaintiffs hereby reallege and incorporate each and every allegation contained in

paragraphs 1 through 114 with the same force as though separately alleged herein.

116.    Title VII, through the Pregnancy Discrimination Act of 1978, prohibits an

employer from discriminating against an employee in compensation, terms, conditions, or

privileges of employment on the basis of that employee's religion, sex, or pregnancy.

117.    Defendant violated Title VII by terminating Plaintiffs' employment based on their

religion, sex, and pregnancy.

118.    As a direct and proximate consequence of Defendant's religion, sex, and

pregnancy discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages,

including, but not limited to, emotional distress and suffering, all in amounts to be determined at

trial.

119.    Defendant's discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights.  Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendant.

### EIGHTH CAUSE OF ACTION
**Wrongful Termination in Violation of the ADA**
**(All Plaintiffs Against Defendant Option Care)**

120.    Plaintiffs hereby reallege and incorporates each and every allegation contained in paragraphs 1 through 119 with the same force as though separately alleged herein.

121.    The ADA prohibits an employer from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of actual or perceived disability.

122.    Defendant violated the ADA by terminating Plaintiffs' employments based in part on perceived disability.

123.    As a direct and proximate consequence of Defendant's perceived disability discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

124.    Defendant's discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights.  Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendant.

### NINTH CAUSE OF ACTION
**Wrongful Termination in Violation of the ADEA**
**(Plaintiff Lilienthal Against Defendant Option Care)**

125.    Plaintiffs hereby reallege and incorporates each and every allegation contained in paragraphs 1 through 124 with the same force as though separately alleged herein.

126.   The ADEA prohibits an employer from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of age.

127.   Defendant violated the ADEA by terminating Plaintiff Lilienthal's employment based in part on her age.

128.   As a direct and proximate consequence of Defendant's age discrimination, Plaintiff Lilienthal has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

129.   Defendant's discriminatory treatment of Plaintiff Lilienthal was willful and in reckless disregard of Plaintiff Lilienthal's protected rights.  Accordingly, Plaintiff Lilienthal is entitled to an award of punitive damages against Defendant.

**TENTH CAUSE OF ACTION**
**Wrongful Termination Based on Religion, Sex, Pregnancy, and Perceived Disability**
**in Violation of the NYCHRL**
**(All Plaintiffs Against All Defendants)**

130.   Plaintiffs hereby reallege and incorporates each and every allegation contained in paragraphs 1 through 129 with the same force as though separately alleged herein.

131.   The NYCHRL prohibits an employer from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of religion, sex, pregnancy, or actual or perceived disability.

132.   Defendants violated the NYCHRL by terminating Plaintiffs' employments based on religion, sex, pregnancy, and perceived disability.

133.   As a direct and proximate consequence of Defendants' religion, sex, pregnancy, and perceived disability discrimination, Plaintiffs have suffered, and continue to suffer,

substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

134.    Defendants' discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights.  Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants.

## ELEVENTH CAUSE OF ACTION
### Wrongful Termination Based on Age in Violation of the NYCHRL
### (Plaintiff Lilienthal Against All Defendants)

135.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 134 with the same force as though separately alleged herein.

136.    The NYCHRL prohibits an employer from discriminating against an employee in compensation, terms, conditions, or privileges of employment on the basis of age.

137.    Defendants violated the NYCHRL by terminating Plaintiff Lilienthal's employment based on her age.

138.    As a direct and proximate consequence of Defendants' age discrimination, Plaintiff Lilienthal has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

139.    Defendants' discriminatory treatment of Plaintiff Lilienthal was willful and in reckless disregard of Plaintiff Lilienthal's protected rights.  Accordingly, Plaintiff Lilienthal is entitled to an award of punitive damages against Defendant.

## TWELFTH CAUSE OF ACTION
### Retaliation in Violation of Title VII
### (All Plaintiffs Against Defendant Option Care)

140.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 139 with the same force as though separately alleged herein.

141.    Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

142.    Plaintiffs engaged in protected activity under Title VII when they requested reasonable accommodations for their pregnancies and for their religious obligations.

143.    Defendant retaliated against Plaintiffs by subjecting them to further discrimination and harassment and, ultimately, terminating their employments.

144.    As such, Defendant has violated Title VII.

145.    As a direct and proximate consequence of Defendant's retaliation, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

**THIRTEENTH CAUSE OF ACTION**
**Retaliation in Violation of the NYCHRL**
**(All Plaintiffs All Defendants)**

146.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 145 with the same force as though separately alleged herein.

147.    The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

148.    Plaintiffs engaged in protected activity under the NYCHRL when they requested reasonable accommodations for their pregnancies and for their religious obligations.

149.    Defendants retaliated against Plaintiffs by subjecting them to further discrimination and harassment and, ultimately, terminating their employments.

150.    As such, Defendants have violated the NYCHRL.

151.    As a direct and proximate consequence of Defendants' retaliation, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

**FOURTEENTH CAUSE OF ACTION**
**Retaliation in Violation of the FMLA**
**(All Plaintiffs Against Defendant Option Care)**

152.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 151 with the same force as though separately alleged herein.

153.    Plaintiffs were entitled to FMLA leave, as they had worked for Defendant for over one (1) year and one thousand two hundred fifty (1250) hours, and Defendant employs more than fifty (50) employees.

154.    Defendant, while Plaintiff Tomsky was out of work on pregnancy-related FMLA leave, decided to terminate her.

155.    Defendant's decision to terminate Plaintiff was based on her use of FMLA qualifying leave.

156.    Defendant knew that Plaintiff Lilienthal would have upcoming FMLA leave eventually.  Therefore they terminated her after discovering her pregnancy.

157.    As a result, Plaintiffs are entitled to equitable relief, economic damages, liquidated damages, attorneys' fees and costs, and whatever other remedy the Court deems suitable.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

    A.  For the first cause of action, damages to be determined at trial;
    B.  For the second cause of action, damages to be determined at trial;
    C.  For the third cause of action, damages to be determined at trial;
    D.  For the fourth cause of action, damages to be determined at trial;
    E.  For the fifth cause of action, damages to be determined at trial;
    F.  For the sixth cause of action, damages to be determined at trial;
    G.  For the seventh cause of action, damages to be determined at trial;
    H.  For the eighth cause of action, damages to be determined at trial;
    I.  For the ninth cause of action, damages to be determined at trial;
    J.  For the tenth cause of action, damages to be determined at trial;
    K.  For the eleventh cause of action, damages to be determined at trial;
    L.  For the twelfth cause of action, damages to be determined at trial;
    M.  For the thirteenth cause of action, damages to be determined at trial;
    N.  For the fourteenth cause of action, damages to be determined at trial; and
    O.  For such other and further relief as the Court deems just and proper.

Dated:      New York, New York
             August 23, 2017

By:                    _____

Tiffany Ma [TM-3561]
YOUNG & MA, LLP
575 Lexington Avenue, Fourth Floor
New York, NY 10022
(212) 971-9773
tma@youngandma.com

Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiffs*